GEE et ux. v. PARKS.    (No. 5727.)

(Court of Civil Appeals of Texas. Austin. Feb. 26, 1917. Rehearing Denied April 4, 1917.)

1. BANKRUPTCY ⟨⟩188(3)—RIGHTS OF TRUSTEE—SECRET EQUITIES.

The wife paid seven-eighths purchase price of land taken in name of husband. The husband bought goods and gave his note and mortgage to a company. The company borrowed money from a bank, depositing accounts and the note and mortgage as collateral, and was thereafter declared bankrupt. The trustee recovered the collateral from the bank. *Held*, that he became a lien creditor as to the assets of the bankrupt company, and his rights were superior to the secret equity of the debtor's wife, which had in no way been brought to the notice of the creditor, or of the bank, or of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 295.]

2. BANKRUPTCY ⟨⟩151—RIGHTS OF TRUSTEE—PROPERTY OF BANKRUPT.

Under Bankr. Act July 1, 1898, c. 541, § 47, 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (U. S. Comp. St. 1913, § 9631), reading that the trustee as to all property in custody of the bankruptcy court is vested with all rights of a creditor holding a lien thereon, upon declaration of bankruptcy the trustee has title to all the property of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193, 239.]

3. BANKRUPTCY ⟨⟩257—RIGHTS OF TRUSTEE—SECRET EQUITIES.

Where a wife paid seven-eighths purchase price of land taken in name of her husband, and he bought goods giving note and mortgage to a company which borrowed money from bank depositing accounts and the note as collateral, and the company was thereafter declared bankrupt, and the trustee recovered the collateral from the bank, the husband's title being the legal title, and the creditor having the right to convey legal title, the trustee could also convey it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 356, 357.]

4. BANKRUPTCY ⟨⟩268—RIGHTS OF TRUSTEE—SECRET EQUITIES.

In such case, where an innocent party purchased the note and mortgage, paying value therefor without notice of the wife's equity, he acquired title as against her, even though the creditor might not have done so.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 372, 379.]

5. BILLS AND NOTES ⟨⟩317—PURCHASE OF NOTE PAST DUE—NOTICE.

Purchaser of past-due note takes it with notice of any defense which the maker may have, but not with notice of secret equities of third persons.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 763½.]

Appeal from District Court, Brown County; John W. Goodwin, Judge.

Suit by W. C. Parks against John E. Gee and wife. Judgment for plaintiff, and defendants appeal. Affirmed.

Wilkinson & McGaugh, of Brownwood, for appellants. McCartney & McGee, of Brownwood, and E. B. Hendricks, of Austin, for appellee.

### Findings of Fact.

JENKINS, J. We adopt as our findings of fact the following findings by the trial court:

"(1) I find that the note sued upon was executed on the 7th day of August, 1913, and was due and payable 30 days after date, and that at the time of the execution thereof John Gee also made, executed, and delivered the mortgage sued upon to secure said note.

"(2) I find that the note sued upon was given by John Gee in renewal of a previous note given by him to Baker-Timmins Hardware Company, which previous note was unsecured.

"(3) I find that the land embraced in the mortgage given by John Gee to Baker-Timmins Hardware Company was conveyed to John Gee, and the title thereto stood in his name at the time of the execution of the said mortgage, and has ever since so stood; that John Gee purchased said land, giving therefor a house and lot in the city of Brownwood, and assuming an incumbrance of $600 against said land; that the house and lot given in exchange for the land in question was purchased by John Gee, and the title thereto taken in his name; that said house and lot cost $1,600; that Mrs. Gee, intervener, paid out of her separate means $1,400 of the $1,600 given for the house and lot; and that it was the understanding by and between her and John Gee that she was to have fourteen-sixteenths interest in said house and lot.

"(4) I find that at the time John Gee executed the note and mortgage in question Baker-Timmins Hardware Company had neither actual nor constructive notice of any interest of Mrs. Gee in the land in question or that she claimed any interest in said land.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"(5) I find that Baker-Timmins Hardware Company borrowed from the Coggin National Bank $10,000, and gave said bank its note therefor, with W. C. Parks as surety; that at the time Parks signed said note as surety, and as an inducement to him to so sign the same. Baker-Timmins Hardware Company deposited with the Coggin National Bank as collateral a large amount of notes and accounts due Baker-Timmins Hardware Company, with the understanding and agreement by and between it and Parks and the said bank that said notes and accounts should be held as collateral to secure the note of Baker-Timmins Hardware Company to said bank, and also to indemnify W. C. Parks as surety on said note to the bank; that among the notes so deposited by Baker-Timmins Hardware Company with the Coggin National Bank, was a note given by John Gee to said hardware company, and which was later, and after its maturity, renewed by the giving of the note sued upon by plaintiff.

"(6) I find that within four months next before Baker-Timmins Hardware Company were adjudged bankrupt said company borrowed of the Citizens' National Bank $20,000 for which it executed to said bank its note with W. C. Parks as surety. I find that Baker-Timmins Hardware Company, W. C. Parks, and said bank also had a contract and agreement in all respects similar to the contract and agreement between said hardware company, Parks, and the Coggin National Bank with reference to the Citizens' National Bank, and to indemnify W. C. Parks as surety, and I find that a large amount of such collateral was deposited with said Citizens' National Bank for said purpose.

"(7) I find that the note sued upon was given by John Gee in renewal of a former note given by him to Baker-Timmins Hardware Company; that said former note had been deposited with the Coggin National Bank under the agreement referred to in the ——— finding of fact, and that when the note sued upon was taken in renewal thereof, and before its maturity, it was deposited with the Coggin National Bank, and took the place of the original note; that the old John Gee note, at and before the maturity thereof, had been deposited with Coggin National Bank, under the aforesaid agreement, and was held by it under said agreement at the time of its said renewal. I find that W. C. Parks never before the filing of this suit knew of or had either actual or constructive notice of Mrs. Gee's interest in the land in question, or that she ever claimed any interest therein.

"(8) I find that about the ——— day of ———, A. D. 191—, Baker-Timmins Hardware Company was adjudged bankrupt by the United States District Court at San Angelo, Tex., and G. S. Mason appointed trustee; that said trustee instituted suit against the Coggin National Bank and W. C. Parks to recover all the collateral notes and accounts deposited with said bank under the agreement referred to in the ——— finding of fact, and that he also instituted suit against the Citizens' National Bank and W. C. Parks to recover all collateral paper deposited with said bank under agreement referred to in ——— finding of fact; that the suit against Parks and the Citizens' National Bank resulted in judgment in favor of the trustee for all the collateral paper held by it; that after judgment W. C. Parks effected a settlement with said trustee by which he purchased from and the trustee released his claim as trustee on all the collateral held by the Coggin National Bank and the Citizens' National Bank, including the note sued on, paying therefor $19,000, and the judgment against the Citizens' National Bank was thereby satisfied, and the case against the Coggin National Bank and W. C. Parks dismissed.

"(9) That the ground upon which the assignee in bankruptcy sought to recover and upon which he did recover in the suit against Parks and the Citizens' National Bank was that the hypothecation of said collateral was a preference under the bankrupt laws and the trustee relied upon the same ground to recover the collateral held by the Coggin National Bank.

"(10) I find that W. C. Parks had no notice, actual or constructive, of intervener's interest in the land in controversy, or of her claim thereto, until after the filing of this suit.

"(11) I find that the note given by Baker-Timmins Hardware Company, and signed by W. C. Parks, as surety, and payable to Coggin National Bank, has been paid.

"(12) I find that the face value of the collateral deposited by Baker-Timmins Hardware Company with Coggin National Bank and the Citizens' National Bank was $———.

"(13) I find that the note sued upon was payable to Baker-Timmins Hardware Company or order, and was not indorsed, but was transferred by written contract to said bank, as collateral, and after maturity was transferred by written assignment by the trustee to W. C. Parks."

The court filed conclusions of law as follows:

"(1) That plaintiff is entitled to recover of and from John Gee the amount of the note, principal, interest, and attorney's fees, as found by the jury.

"(2) I find that Mrs. Gee is the equitable owner of fourteen-sixteenths interest in the land described in the mortgage, and that two-sixteenths of it is the community estate of John Gee and wife.

"(3) I find that as between Baker-Timmins Hardware Company and Mrs. Gee, Mrs. Gee would be entitled to assert her equitable title to the land embraced in the mortgage, but as against W. C. Parks, she ought not to be heard to assert her equitable title to said land:

"First, because at the time the note and the one for which the note in this suit was given in renewal were pledged to Coggin National Bank and W. C. Parks neither the bank nor Parks had notice, actual or constructive, of her equitable title to the land.

"Second, because the trustee in bankruptcy, under the act of 1910, took the note and mortgage in question, and is entitled to all the rights and remedies of a lien creditor without notice of Baker-Timmins Hardware Company and W. C. Parks having bought the note and mortgage from the trustee, and, having paid a valuable consideration for the note and mortgage, is entitled to be protected as an innocent purchaser for value of the note and mortgage.

"Third, because W. C. Parks, having acquired by way of pledge the note and mortgage in question, without notice of Mrs. Gee's equitable title, and he having purchased said note and mortgage from the trustee in bankruptcy for value and without notice of Mrs. Gee's equitable title to the land, is entitled to be protected against her equitable title.

"(4) The fact that the note was past due when purchased by W. C. Parks from the trustee in bankruptcy would not charge him with notice of the equitable title of Mrs. Gee, and he took the note and mortgage, by his purchase from the trustee, relieved of her claim to the land.

"(5) I find that Mrs. Gee, to the extent that she paid interest on the $600 incumbrance on the land, is entitled to become subrogated to the rights of the holder of that lien, as against W. C. Parks.

"(6) I therefore find for plaintiff, and against Mrs. Gee for the debt, interest, and attorney's fees, as fixed by the verdict of the jury, and foreclosure of the mortgage lien in favor of W. C. Parks against John Gee and wife, Mrs. Gee, subject to the prior lien for $600, and I find that the proceeds of sale should be applied,

first, to reimburse Mrs. Gee, and the balance be applied to plaintiff's debt and costs."

Judgment was entered in accordance with said conclusions.

## Opinion.

[1] There are a number of interesting questions of law raised under the assignments in this case, but we think that the following proposition by the appellee is correct, and that it is determinative of this case, without reference to the other questions involved, to wit: The trustee in bankruptcy became a lien creditor as to the assets of the Baker-Timmins Hardware Company upon the institution of bankruptcy proceedings against the said company superior to the secret equity of Mrs. Maud Gee, the intervener. Fairbanks Shovel Co. v. Wills, 240 U. S. 642, 36 Sup. Ct. 466, 60 L. Ed. 841; Acme Harvester Co. v. Beekman, 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 213; Everett v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154; Cooper Grocery Co. v. Park, 218 Fed. 43, 134 C. C. A. 64; In re Pittsburg Coal Co., 215 Fed. 704, 132 C. C. A. 81; In re Kruse (D. C.) 234 Fed. 472; Bank v. Sabin, 227 Fed. 581, 142 C. C. A. 211; Interstate Banking & Trust Co. v. Brown, 235 Fed. 32, 148 C. C. A. 526; In re Ricketts, 234 Fed. 287, 148 C. C. A. 187; In re Waters Co. (D. C.) 206 Fed. 845.

[2, 3] We adopt the following portion of the argument of appellee as our opinion in this case:

"Prior to the 1910 amendment to the bankrupt law it had been held by the Supreme Court of the United States in a series of cases, of which the cases of York v. Cassell, 201 U. S. 344 [26 Sup. Ct. 481, 50 L. Ed. 782], and Thompson v. Fairbanks, 196 U. S. 516 [25 Sup. Ct. 306, 49 L. Ed. 577], are leading examples, that a trustee in bankruptcy took the title of the bankrupt subject to all equities existing in or against it in favor of third parties. The lower and intermediate federal courts had likewise often so ruled, as is shown by the authorities covering this matter cited in appellant's brief, and a vast number of others which might be cited. The practical results obtained in bankruptcy proceedings by following this construction of the law, which by the way was manifestly correct, frequently led to the greatest frauds, and was such an invitation to perjury that Congress in 1910 amended the act, making section 8 thereof read in part as follows: 'And such trustees as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied.' See 36 U. S. Statutes at Large, p. 840, which statute is set out in words or substance in the cases above cited. The lower federal courts in construing this amendment, as usual, did not agree, but it is of no interest to review their contrary holdings, as the cases above cited are authoritative and final. Appellants in their brief, among other things, say that this property was never in the custody of the bankrupt court, because its physical possession remained either with the Coggin National Bank or with W. C. Parks. In the case of Harvester Co. v. Beekman [222

193 S.W.—49

U. S. 300, 32 Sup. Ct. 96], 56 L. Ed. 213, in discussing this question, the Supreme Court of the United States announced the law as follows: 'The exclusive jurisdiction of the bankruptcy court is so far in rem that the estate is regarded as in custodia legis from the filing of the petition.' Paragraph 5, § 70a, of the bankrupt act provides that there shall vest in the trustee all property which prior to the filing of the petition the bankrupt could by any means have transferred or which might have been levied upon and sold under judicial process against the bankrupt. In the case of Fairbanks v. Wills, supra, the same court, in construing the amendment of 1910, used the following language: 'Since the amendment * * * of the Bankruptcy Act by the act of June 25, 1910, trustees have the rights and remedies of a lien creditor or a judgment creditor as against an unrecorded transfer. The estate was in custodia legis from the filing of the petition.' The provision of the bankrupt act above quoted is itself a complete answer to appellant's contention in this respect. It cannot for a moment be denied that the Baker-Timmins Hardware Company could have transferred the note and security involved in this suit. Parks and the bank merely had a lien against it. The legal title remained with the Baker-Timmins Hardware Company. It was the property of the bankrupt, and passed into the custody of the bankrupt court immediately upon the institution of bankruptcy proceedings. Prior to this time it could have been subjected to a lien by a writ of garnishment by any creditor of the Baker-Timmins Hardware Company. If a creditor of the hardware company had served a writ of garnishment upon the Coggin National Bank, he might or might not have acquired a lien. There being a conflict of authority upon this proposition, we pass it up without further comment. He certainly would have impounded its proceeds subject to the rights of the bank. But if such creditor had served a writ of garnishment on John E. Gee, the maker of this note, he would have obtained a lien against it, which would, of course have carried the mortgage lien security. See Thompson v. Hardware Co., 156 S. W. 301. For the general principle of lien involved see Focke v. Blum, 82 Tex. 441 [17 S. W. 770]. Now suppose that a creditor of the Baker-Timmins Hardware Company had served a writ of garnishment upon John E. Gee, and made the Coggin National Bank a party to the suit, or the bank had intervened in the garnishment suit, and judgment had been rendered subjecting the Gee note and its mortgage security to the garnishment lien, and suppose the court had ordered the note and security sold under this judgment in order to speedily realize on it, and Parks, or any one else, had bought the note and mortgage at this sale, paying a valuable consideration therefor, without any notice of Mrs. Gee's alleged equity, then the title of the purchaser would be beyond question. Now the amendment of 1910 places the trustee in bankrupty in identically the same position as such garnishing creditor holding such garnishment lien, and a sale by the trustee to Parks gave him a perfect title, free of the claims of Mrs. Gee. * * *

"John Gee's title was the legal title. See Patty v. Middleton, 82 Tex. 591 [17 S. W. 909]. If Baker-Timmins Hardware Company had sold this land under their deed of trust, a purchaser paying value would have gotten a perfect title. The trustee certainly could confer as much title as the hardware company could. Suppose the trustee had foreclosed the deed of trust, a purchaser at his sale surely would have been protected.

"Recurring to the effect of the amendment of 1910, the case of Bank v. Sabin, supra, was a contest between the trustee and a bank, in which the bank had advanced money to the bankrupt to buy a stock of goods under an agreement that the bankrupt should hold the goods as trustee for

the bank. The court held that the trustee in bankruptcy was entitled to the goods against the claim of the bank. The court said: 'To the contention of the appellant that the trustee is without authority to maintain the proceeding, for the reason that no creditor had secured a lien upon the goods at the time the bank took possession of them, and hence the trustee secured no greater rights than the bankrupt himself had, it is only necessary to state that * * * under this provision of the statute (meaning the amendment of 1910) the trustee is not limited to such objections to a transaction between the bankrupt and a creditor as the bankrupt might have had, but he may make any objection that a creditor holding a lien might make.' * * *

"In the case of Grocery Co. v. Park, above cited, the Circuit Court of Appeals for the Fifth Circuit, in discussing this amendment, used the following pertinent language: 'The petitioners in this case claim that the trustee takes this property subject to the lien of the deed of trust by reason of the fact that said security was mentioned in the voluntary petition of bankruptcy, and therefore, although the deed of trust was not recorded as required by the statute of Texas, the trustee takes it with notice of the lien, and therefore subject to it. To decide this question it is necessary to consider in what capacity the trustee in bankruptcy takes the property. Does he take it as an ordinary voluntary purchaser, or does he take it as representing the rights of the creditors with a lien acquired by legal or equitable means, and subject only to such liens and rights as would be valid against such creditors? The provision of the amendment of 1910, read in connection with 67a, would seem to settle this question against the contention of the petitioners in this case.'

"The amendment of 1910 does not clothe the trustee with the rights of a lien creditor as to the property coming into his 'possession,' but clothes him with such rights as to all property coming into the custody of the bankruptcy court. That a state court, notwithstanding it had foreclosed a lien on property could not proceed to sell it after the intervention of bankruptcy, was decided by the San Antonio Court of Civil Appeals in the case of Kopplin v. Ludwig, 170 S. W. 105.

"In the case of Roszell v. Coal Corp. (D. C.) 235 Fed. 351, a decision which has just been handed down, the court, quoting from the case of Lazarus v. Prentice, 234 U. S. 263 [34 Sup. Ct. 851, 58 L. Ed. 1305], said: 'The filing of the petition and adjudication in the bankruptcy court * * * brought the property of the bankrupts wherever situated into custodia legis, and it was thus held from the date of the filing of the petition.' "

[4] Such being the law, it follows from the facts in this case that, the trustee in bankruptcy having acquired the right of the bankrupt in the note and deed of trust sued on, plus the right of a lien creditor, and W. C. Parks having purchased said note and security, and paid value therefor, without any notice of the intervener's equity, he acquired title as against the intervener, even though the Baker-Timmins Hardware Company might not have done so. Cantrell v. Dyer, 6 Tex. Civ. App. 551, 25 S. W. 1098; Holmes v. Buckner, 67 Tex. 107, 2 S. W. 452; White v. Frank, 91 Tex. 71, 40 S. W. 962; Saunders v. Isbell, 5 Tex. Civ. App. 513, 24 S. W. 307; Lynch v. Johnson, 170 N. C. 110, 86 S. E. 995; Webber v. Clark, 136 Ill. 256, 26 N. E. 360, 32 N. E. 748; Hardin v. Osborne, 97 Ill. 571.

[5] It is contended by appellant that appellee is affected with the equity of Mrs. Gee, for the reason that the note which he purchased from the trustee in bankruptcy was past due. The purchaser of a past-due note takes it with notice of any defense to the note which the maker may have, but does not take it with notice of the secret equities of third persons. Kempner v. Huddleston, 90 Tex. 184, 37 S. W. 1066; Cordage Co. v. Seymour, 67 Minn. 311, 69 N. W. 1082; Moffett v. Parker, 71 Minn. 139, 73 N. W. 851, 70 Am. St. Rep. 319; Layman v. Vicknair, 47 La. Ann. 679, 17 South. 265; Bank v. Garlick, 137 La. 282, 68 South. 611; Dulin v. Hunter, 98 Ala. 539, 13 South. 301; Porter v. King (D. C.) 1 Fed. 760; Mohr v. Byrne, 135 Cal. 87, 67 Pac. 11; Gymnasium Co. v. Bank, 179 Ill. 599, 54 N. E. 297, 46 L. R. A. 753, 70 Am. St. Rep. 135; Justice v. Stonecipher, 267 Ill. 448, 108 N. E. 723; Jones on Mortgages, § 843. In the case of Cordage Co. v. Seymour, supra, the court said:

"The general rule is that a purchaser of past-due commercial paper takes it subject to all equities existing between the parties to the paper, but not to any latent equities in favor of the third party."

And such we understand to be the law.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.