MATTIE CANTRELL ET AL. v. J. E. DYER.

No. 489.

**1. Innocent Purchaser.**—Mrs. Beard, a widow administering the community property of herself and her deceased husband, as survivor, traded lots and a debt due the community estate for the tract of land in controversy, and afterwards (she having continued the banking business of her deceased husband), made an assignment for the benefit of creditors and placed the land in controversy upon her schedule, and it passed by her deed of assignment to her assignee, who sold it to P., who sold it to appellee, who paid full value for it in cash and had no actual notice that Mrs. Beard had traded community property for it, but was acquainted with Beard and his family and lived in the same town, and was present at the assignee's sale. *Held,* that appellee was an innocent purchaser, and took good title to the whole land.

**2. Same—Outstanding Equity.**—The assignee took no better title than Mrs. Beard had, and so long as no additional equities supervened, such title only would pass to a purchaser from the assignee; but when a purchaser paid value without notice of any secret trust with which the property was affected, an equity equal to that of the secret beneficiary arose, which coupled with the legal title would give priority to such purchaser.

**3. Quitclaim Title.**—A deed from an assignee is not necessarily a quitclaim deed in the sense meant when it is said that one holding under a quitclaim deed can not be a bona fide purchaser, because the deed conveys the land for a full consideration, and not the mere chance of the land.

APPEAL from Fort Bend. Tried below before Hon. T. S. REESE.

The agreed case was as follows:

In the year 1880 T. B. Beard died intestate, leaving Callie his widow, and plaintiff Mattie his only living child and sole descendant; the widow qualified during same year as survivor of the community estate, giving a bond as required by law in the sum of $13,472.28; the estate was appraised at $13,472.28 in excess of liabilities. Beard was engaged in the banking business at the time of his death; Dyer was acquainted with him, and knew that he was in said business, and also knew his widow and child, all residing in the same town in which he lived. When Callie Beard qualified as survivor, she inventoried as part of the community property certain town lots, which on December 2, 1882, she conveyed to one A. Kerr, and he on the same day conveyed to her the land in controversy and the improvements then on same, by warranty deed, for a recited consideration of $1200 cash, but in fact the true consideration was the conveyance by her to him of the lots inventoried by her as aforesaid as community property, and the allowance of a credit of $400 on Kerr's account due the community estate.

Callie Beard carried on the banking business in which her husband was engaged at the time of his death on her individual account until May 4, 1887, when she failed, owing about $74,000, at which time she made an

assignment under the statutes of Texas for the benefit of her creditors, conveying by deed of assignment to J. W. Parker, as assignee, amongst other property, the land and tenements in controversy in this suit, which property was scheduled as directed by law, the schedule being duly sworn to by her; this deed and schedule were duly recorded in the proper records about the date of their execution.

On June 30, 1888, said assignee, by virtue of his powers as assignee, at public sale struck the property off to one Garvey at $1401, and afterward, at Garvey's direction, made a deed therefor to Phil P. Pearson, the law partner of the assignee, reciting in the deed all the facts about the assignment of Callie Beard and referring to the deed of assignment from her to him as his authority for selling. Dyer was present at this sale to Garvey, and knew that he was the purchaser at said sale. Dyer bid on same through P. E. Peareson, who is not the same person as Phil P. Pearson, but they are entirely different persons, spelling their sirnames differently. The deed from Parker, assignee, to Pearson was dated June 30, 1888, and filed for record December 3, 1889.

On November 30, 1889, Phil P. Pearson conveyed this property to appellee by a deed with general warranty for $1700, which Dyer paid in cash. Dyer neither then nor prior thereto had any actual notice or knowledge as matter of fact that the property belonged to the community of Callie and T. B. Beard, or that appellants had any interest therein by inheritance from the community estate aforesaid or otherwise, and he knew of no other facts or circumstances to put him upon inquiry, unless such be the legal effect of the facts herein before recited; and his purchase from Pearson was in good faith, unless the facts recited and the legal effect thereof make it otherwise; and in said purchase he intended to buy and supposed he was getting the sole and absolute title and interest to the entire property, unless the facts herein before recited charge him with notice to the contrary.

*Peareson & Ballows,* for appellants.—The court erred in finding as a matter of law that Dyer was an innocent purchaser for value and without notice, and entitled to be protected as such, because

1. There was an assignee's (a quitclaim) deed in the line of the title to the property, and the recitals in the deeds in said line of title advised him fully of this fact, and by reason thereof he could not be an innocent purchaser without notice.

2. The assignee took the property and held it subject to all liens, trusts, equities, and claims to which it was subject in the hands of the bankrupt Callie Beard, and could convey no greater title than he had acquired.

3. The statement of facts show that Dyer did not make any inquiry or exercise any diligence to ascertain the condition of the title. Burr.

on Ass., 433; Bump on Bankruptcy, 471, 449; 1 Am. and Eng. Encycl. of Law, 854, and notes; 11 Am. and Eng. Encycl. of Law, 177, 178, and notes; Parker v. Coop, 60 Texas, 111; Keller v. Smalley, 63 Texas, 519; Renick v. Frazier & Dawson, 55 Texas, 109; Kennedy v. Strong, 10 Johns., 289; Law v. Welch, 139 Mass., 33; Pratt v. Wheeler, 6 Mass., 520; Palmer v. Thayer, 28 Conn., 237; Yearman v. Savings Inst., 95 U. S., 764; Wilson v. Esten, 14 R. I., 621; Winsor v. McLellan, 2 Story, 492; Stewart v. Platt, 101 U. S., 735; Baker v. Vining, 30 Me., 121; Moody v. Litton, 2 Ire., 382; Legor v. Braffe, 2 Barb., 425.

On creation interest of appellant Mattie in the property vested by same being purchased partly with her property: 1 Perry on Trusts, sec. 128; Obertheir v. Stroud, 33 Texas, 522.

This interest was not subject to registration law: Grace v. Wade, 45 Texas, 532; Obertheir v. Stroud, 33 Texas, 522; Blankenship v. Douglass, 26 Texas, 227.

On recitals in deeds being notice to parties: Hardy v. De Leon, 5 Texas, 244; Robertson v. Guerin, 50 Texas, 317; Polk v. Chaison, 72 Texas, 500; Renich v. Frazier & Dawson, 55 Texas, 109; Jackson v. Parkhurst, 9 Wend., 209; Lodge v. Simonton, 23 Am. Dec., 48, notes.

On assignee's deed being a quitclaim and purchaser from him not being such bona fide, etc.: Burr. on Ass., 483; In re Howe, 1 Paige Ch., 124; May v. Le Claire, 11 Wall., 232.

The facts in Dyer's knowledge were sufficient to put a prudent man on inquiry: Harrison v. Boring, 44 Texas, 255; Clay v. Giddings, 47 Texas, 109; Hart v. McDade, 61 Texas, 208; Lodge v. Simonton, 23 Am. Dec., 36.

On the right to show consideration to be other than that stated in the deed, and that the recital of payment does not estop the vendor from showing nonpayment: McAlpine v. Burnett, 19 Texas, 497.

*Goldthwaite, Ewing & Ring*, for appellee.—1. By plain language of the statute, Callie Beard, as survivor of the community, had the same power of disposition which the husband had in his lifetime. This power embraced alienations of all kinds; and while the heir might claim a specific interest in undisposed of property on final settlement with the survivor, yet as to all property disposed of, the sole remedy of the heir was for personal indemnity upon the bond of the survivor. This confirms the title in the assignee's hands, and relegates Mattie Cantrell to her remedy on the bond. Rev. Stats., arts. 2172, 2181; Leatherwood v. Arnold, 66 Texas, 416; Huppman v. Schmidt, 65 Texas, 583.

2. Conceding that the assignee took only such title as the assignor had, yet he got all such title with all the rights and powers in respect thereof which pertained to the assignor. The complete legal title was thus vested in him, and this has passed by specific conveyances to the appellee;

wherefore the appellee's equity as an innocent purchaser being as strong as that of appellant, his legal title must prevail. Moreover, a conveyance by the assignor to an innocent purchaser would have defeated appellant's secret equity, and so would a similar conveyance by or under the assignee. Love v. Berry, 22 Texas, 377; Parker v. Coop, 60 Texas, 116; Lumpkin v. Adams, 74 Texas, 103; Boon v. Chiles, 10 Pet., 210, 211; 2 Pome. Eq. Jur., sec. 742; 1 Pome. Eq. Jur., secs. 416, 417; 1 Story's Eq. Jur., sec. 436.

WILLIAMS, ASSOCIATE JUSTICE.—The facts of this case are agreed to, and are briefly stated in the record, which renders it unnecessary that they be restated here.

The first proposition of law presented by appellants is, in substance, that one who purchases real estate through an assignee for the benefit of creditors can not be an innocent purchaser as against the holder of an equitable title with which the legal title, in the hands of the assignor, was charged. It is agreed that appellee bought from one who purchased at the sale by the assignee for the benefit of creditors, paying full value for the property, without actual notice of the secret equity asserted by appellant.

Under the principles of equity as administered in this State, we are of the opinion that he is an innocent purchaser, and as such entitled to protection.

Mrs. Beard held the legal title to the property, and by her general assignment for the benefit of her creditors, passed to the assignee all such rights and powers over it as she possessed. The title which the assignee took was no better than that which she held, and so long as no additional equities supervened, such title only would pass to a purchaser through the assignee, whether immediate or remote. But when a purchaser paid value without notice of any secret trust with which the property was affected, an equity equal to that of the cestui que trust arose, which, being coupled with the legal title, would give priority to the purchaser. Purchasers at execution sales, as well as from heirs, administrators, and executors, are all protected in this State when the necessary facts appear; and we can see no sound distinction in principle between those cases and that of a purchaser from the assignee for the benefit of creditors, the apparent title in each case passing to the purchaser. Ayers v. Duprey, 27 Texas, 593; Love v. Berry, 22 Texas, 377; Taylor v. Harrison, 47 Texas, 454.

The case of appellee is not one of a lien creditor simply, seeking to postpone to his lien the trust estate of appellant by force of the express provisions of our registration laws. To such claims as that asserted by appellant, it is true, the registration laws do not apply. Appellee is a bona fide purchaser without notice, and not merely a creditor, and is protected by principles of equity. Parker v. Coop, 60 Texas, 116.

The point is made, that a deed from an assignee is necessarily a quit-claim; but it is not such in the sense meant when it is said that one can not be a bona fide purchaser under a quitclaim deed.   The deed seems to have undertaken to convey the land itself, for a full consideration, rather than the mere chance of the title.   Taylor v. Harrison, supra; Richardson v. Levi, 67 Texas, 359.

The circumstances relied on and stated in the agreed case to put appellee on notice of appellant's claim were, we think, not sufficient for that purpose.

We have decided the case on the assumption that appellant had the equitable title to one-half of the land before the assignment by Mrs. Beard, but we find it unnecessary in this case to so hold.   Conceding that she had such equity, she can not enforce it against appellee.

*Affirmed.*

Delivered March 22, 1894.